

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joe McCasland
District Attorney
Jefferson, Texas

Dear Sir:

Opinion No. O-3574
Re: Venue for murder prosecution
under stated facts; if mortal
wounds inflicted in differ-
ent state, but dead body found
in Texas, does this state have
venue?

This will acknowledge receipt of your telegram of
April 4th, from which we quote as follows:

"Houston inflicted mortal wounds on Moje
in Tallahassee Fla Apr 1 inst Stop Houston was
found in the exclusive possession of Mojes car
with Mojes dead body in it in Morris Co Texas
on morning Apr 3 Stop Houston confesses in
writing that he inflicted mortal wounds with
wrench and that Moje was alive on their
arrival in Haskom Texas Apr 2 and confesses
that Moje died a few miles east of Marshall
Harrison Co Texas Apr 4 we can not prove
place of death outside of confession. Medi-
cal doctors opinion Moje had been dead 48
hours or more when found which excludes the
theory that he may have died in Morris County
have checked venue articles Vernons Criminal
Code Title 4 Chapter 2 and annotated decisions
and am unable to find whether venue for murder
prosecution lies in Texas Stop My opinion venue
probably in Florida also Article 186 Code does
not cover this case as it would be extraterritorial
and that theft cases and all cases cited under
this article do not apply to murder. If venue
in Texas please advise immediately what county."

Chapter 2 of Title 4 of the Code of Criminal Pro-
cedure of Texas contains the venue statutes applicable in
this State. We quote certain articles:

"Article 186.  Offenses not committed in the State.

"Prosecution for offenses committed wholly or in part without, and made punishable by law within this State, may be begun and carried on in any county in which the offender is found.

".  .  .  .

"Article 191.  Persons dying out of the State.

"If any person, being at the time within this State, shall inflict upon another, also within this State, an injury of which such person afterward dies without the limits of this State, the person so offending shall be liable to prosecution in the county where the injury was inflicted.

"Article 192.  Person within the State inflicting injury on another out of the State.

"If a person, being at the time within this State, shall inflict upon another out of this State an injury by reason of which the injured person dies without the limits of this State, he may be prosecuted in the county where he was when the injury was inflicted.

"Article 193.  Person without the State inflicting an injury on one within.

"If a person, being at the time without this State, shall inflict upon another who is at the time within this State, an injury causing death, he may be prosecuted in the county where the person injured dies.

"Article 195.  Injured in one county and dying in another.

"If a person receive an injury in one county and dies in another by reason of such injury, the

offender may be prosecuted in the county
where the injury was received or where the
death occurred, or in the county where the
dead body is found. (As amended Acts 1935,
44th Leg., p. 487, ch. 200, ¶ 1.)

". . . .

"Article 210. Proof of venue

"In all cases mentioned in this chapter,
the indictment or information, or any pro-
ceeding in the case, may allege that the of-
fense was committed in the county where the
prosecution is carried on. To sustain the
allegation of venue, it shall only be necessary
to prove that by reason of the facts in the
case, the county where such prosecution is
carried on has jurisdiction.

"Article 211. Other offenses

"If venue is not specifically stated, the
proper county for the prosecution of offenses
is that in which the offense was committed."

All articles quoted above are as shown in the 1925
revision of the Code of Criminal Procedure, except Article
186 which was amended by the 44th Legislature in 1935 to
add the last clause, "or in the county where the dead body
is found."

Reference to the above articles, which appear to
be all of the statutory pronouncements pertinent to our
problem, discloses a legislative silence with reference to
venue for a murder prosecution under the facts as submitted
by you. On first impression, one might be impressed with
the belief that Article 186 would give Texas jurisdictional
venue; but as you say, to give the statute that construc-
tion, the effect would be extraterritorial. A state or
sovereignty cannot punish for offenses committed beyond
its territorial limits. 16 C. J. 165, sec. 196.

The only instances wherein this article of our
Code has been mentioned by our courts were in cases of theft,
bringing stolen property into the State, swindling and re-

moval of mortgaged property from the State, and in the case of Sims v. State, 28 Tex. Cr. R. 447, 13 S. W. 653 (swindling), the court says:

"In all cases not specially named in the Code, the proper county for the prosecution of offenses is that in which the offense was committed."

This is the identical language of Article 211, C. C. P., supra.

We have made a diligent search of authorities and find no case where our Texas courts have passed upon the question presented by you. Nor, do we believe such a case exists.

Article 191, supra, is specific legislation on the exact converse of our problem. Under its plain language, if the fact situation was reversed and if Houston had inflicted the mortal wounds on Moje in Texas, with death occurring in some other state, the venue would very properly and without doubt be in the county where the blows were given. The language of this article cannot be turned or twisted, however, to say it gives venue in the instant case. Indeed, the absence of such a statute as would give venue here is much emphasized by the insertion into our Code of Article 191.

Articles 192 and 195, supra, are clearly inapplicable to the situation we have before us. These articles again emphasize the absence of specific legislation to cover the facts you submit.

Article 195, supra, would answer our problem if such application was not so emphatically made restrictive, and therefore unavailable to us, by the use of the word "county". We do not have the liberty of substituting "state" for "county".

It has been held that Article 210, supra, cannot be construed to relieve the state of the necessity of proving venue. A plea of not guilty puts in issue the allegation of venue, and the State must prove such allegation, or a conviction will not be warranted. The venue must be proved as

alleged. See Article 210, Vernon's Annotated Code of Criminal Procedure, and many cases there cited.

In Dean Potts' Cases on Criminal Procedure (2nd Ed., Texas), at page 3 appears the following statement:

"Where the stroke is given in one state and the death occurs in another the crime is not punishable in the latter state in the absense of statute. Carter v. State, 27 N. J. L. 499 (1859); State v. Kelly, 76 Me. 311, 49 Am. Rep. 620 (1884); Ex parte McNeeley, 36 W. Va. 84, 32 Am. St. Rep. 831; but statutes providing for such cases are uniformly upheld as constitutional. Com. v. Macloon, 101 Mass. 1, 100 Am. Dec. 89 (1869); Tyler v. People, 8 Mich. 320 (1860); Ex parte McNeeley, supra."

In the case of United States v. Guiteau, 1 Mackey 498, 47 Am. Rep. 247, it appears that Charles J. Guiteau shot President James A. Garfield in a railway station in Washington, D. C., inflicting a wound from which the President died some three months later in the state of New Jersey. Guiteau was indicted, tried and convicted at a criminal term of the Supreme Court of the District of Columbia. He appealed on the ground that, at common law, where the stroke was given in one state and the death occurred in another, neither state had jurisdiction to try the case. The court, however, decided that the fatal blow made the crime complete, and that venue lay where the blow was struck.

We quote the following language from the text of Ruling Case Law (13 R. C. L. 879, Sec. 181, 182):

"It is clear that when a mortal blow or shot, and the death resulting therefrom, occur in the same nation or state, the offense is there complete, and the courts of that place have jurisdiction to try the slayer for the crime. But when the mortal stroke and death do not take place in the same jurisdiction, a somewhat complicated case is presented. Four centuries ago, according to a case in the Year

Books (7 Henry VII, 8), Mr. Justice Tremaille
said: 'The striking is the principal point,
but it requires death; otherwise it is not
felony; but whether he died in one place or
another is not material.' Nevertheless, it
seems to have been doubtful at common law whe-
ther the killing of one who died in England
of a blow received in foreign parts, and
vice versa, could have been inquired of.
Finally, parliament interposed, and put the
question to rest by passing the statute of
2 Geo. II, e. 21, which provides that when
the stroke has been given in England and the
death occurs out of England, or the reverse,
the killing may be inquired of in that part
of England where either the death or stroke
shall happen respectively. It is the view
of modern authority, independent of any stat-
utory provision upon the subject, that the
crime is committed and is punishable in the
jurisdiction where the fatal wound or blow
is given; in other words, that it is not the
place of the death, but the place where the
criminal act is perpetrated, to which the
jurisdiction to try and punish is given.

"According to the general rule obtaining
in the United States, one accused of murder
or manslaughter is properly indicted and tried
in the state wherein the blow which resulted
in the death were committed, although, if point
of fact, the deceased died in another state.
The courts of that state, alone, have jurisdic-
tion to punish the offense. In many of the
states there are also statutes substantially
providing that where the death occurs outside
of one state, by reason of a stroke given in
another, the latter state may have jurisdiction.
The validity of these statutes seems to be
undisputed, and indeed it has been frequently
asserted that such legislation is but in
affirmance of the common law. The mere circum-
stance that the death occurs within one state
does not, in the absence of a statute to the

contrary, give jurisdiction to the courts thereof if the injury resulting in the death was inflicted in another state or country. And whether the legislature may make the fact of death the basis of local jurisdiction, is a question upon which there has been some difference of judicial opinion. It seems to me clear that the statute is valid in its application to a case where the homicidal act was done outside the jurisdiction of any court, - on the high seas, for example - and the rule might well be held to extend to cases where the blow is struck in some, if not all, foreign countries; but in respect of a homicidal act committed within another or neighboring state, the statute is opposed to the fundamental principle of trial by a jury of the vicinage of the crime, and some courts have not hesitated to hold the law invalid in its application to such a case." (Underscoring ours.)

To the same effect see 26 Am. Jur. 320, Sec. 237. Cases cited, in addition to those by Dean Potts, are: Green v. State, 66 Ala. 40, 41 Am. Rep. 744; People v. Botkin, 132 Cal. 231, 64 P. 286, 84 Am. St. Rep. 39; Com. v. Apkins, 148 Ky. 207, 146 S. W. 431, 39 L. R. A. (N. S.) 822, Ann. Cas. 1913E, 465; State v. McCoy, 8 Rob. (La.) 545, 41 Am. Dec. 301; State v. Foster, 8 La. Ann. 290, 48 Am. Dec. 678; Com. v. Macloon, 101 Mass. 1, 100 Am. Dec. 89.

Another recognized authority stating the principles applicable the same as Dean Potts, Ruling Case Law and American Jurisprudence, is Wharton's Criminal Law, 12th Ed. (1932), pp. 441, 442, Sections 339 and 340; Ibid, p. 405, Sec. 310, citing the Florida case of Davis v. State, 44 Fla. 32, 32 So. 822; also State v. Garrison, 147 Mo. 548, 49 S. W. 508.

In the Davis case, supra, appellant was convicted of murder in Suwannee County, Florida. A doctor testified that deceased, Airth, came to his death in a sanitarium in Atlanta, Georgia, as a result of a pistol shot inflicted by the accused in Suwannee County, Florida; that after the shooting, the deceased, then still living, desired to be

taken to Atlanta, Georgia, and witness accompanied him there, and death occurred the next day. The Florida Supreme Court, after reviewing the facts, said:

"The Circuit Court of Suwannee County had jurisdiction of the crime, if committed in that county; although consummated in another state. Rev. St. | 2360; Roberson v. State, 42 Fla. 212, 28 South. 427; Smith v. State, 42 Fla. 605, 28 South. 758."

The Florida statute clearly gives that state jurisdiction of the offense mentioned by you. We quote Section 7117 of the Compiled General Laws of Florida (1927):

"7117. (5015) Offense commenced here but consummated elsewhere. - When the commission of an offense commenced here is consummated without the boundaries of this State, the offender shall be liable to punishment here therefor, and the jurisdiction in such case shall be in the county in which the offense was commenced."

In view of the authorities herein discussed and cited, it is our opinion that under the facts submitted by you, Texas does not have jurisdiction to punish Houston for the murder of Moje, if he is guilty of such crime, for the reason that as stated in your telegram, Florida, not Texas, would be the place of proper venue. This opinion is to be interpreted, however, only on the assumption your wire gives all the facts on the question propounded. If the defendant did any act within this State to hasten death, another question would be involved. And the opinion is also limited to the offense of murder, and is not to be construed as precluding venue for any other possible offense.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED APR 17, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

By Benjamin Woodall

benjamin Woodall
Assistant

BW:GO

APPROVED
OPINION
COMMITTEE
BY